IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00479-FL

**Annie Dean Wright,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

Plaintiff Annie Dean Wright instituted this action on August 24, 2014, to challenge the denial of her application for social security income. Wright claims that Administrative Law Judge Edward W. Seery erred in his determination by failing to properly weigh the opinions of the consultative examiners and by failing to properly evaluate her obesity. Both Wright and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 17, 19.

After reviewing the parties' arguments, the court has determined that ALJ Seery erred in his decision. There is not substantial evidence to support ALJ Seery's findings that Wright could perform medium work with additional limitations. Further, ALJ Seery failed to properly consider Wright's obesity and what effect, if any, it had on her functional limitations. Therefore the undersigned magistrate judge recommends[1] that Wright's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that the court remand the matter to the Commissioner for further proceedings.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.     Background**

On May 10, 2011, Wright filed applications for supplemental security income and disability benefits on the basis of a disability that allegedly began on August 1, 2009. After her claims were denied at both the initial stage and upon reconsideration, Wright appeared before ALJ Seery for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Seery determined that Wright was not entitled to benefits because she was not disabled. Tr. at 84–93.

ALJ Seery found that Wright had the following severe impairments: diabetes mellitus, hypertension with a history of coronary artery disease, obesity, and mechanical back pain with a diagnosis of arthritis. *Id.* at 87. ALJ Seery also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.*. ALJ Seery determined that Wright had the Residual Functional Capacity ("RFC") to perform a full range of medium work. *Id.* ALJ Seery concluded that Wright could perform her past relevant work as a certified nurse's assistant ("CNA")[2] as it is actually and generally performed. *Id.* at 92. Thus, ALJ Seery found that Wright was not disabled. *Id.* After unsuccessfully seeking review by the Appeals Council, Wright

---

[2] Dictionary of Occupational Titles ("DOT") code 354.377-014 is for home attendant/home health aid. The DOT describes this job as follows: Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self. Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Entertains patient, reads aloud, and plays cards or other games with patient. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients.

commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on August 24, 2014. D.E. 1-2.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is

assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Evidence

Wright was born on February 7, 1952 and, at the time of her alleged onset date, she was 57 years old. Tr. at 17. She worked as a CNA until she lost her job in 2009 due to budget cuts. *Id.* at 17–19. Her medical background includes a history of diabetes and coronary artery disease. *Id.* at 87. In 2004, Wright had a stent placed in her left anterior descending artery to address a blockage. *Id.* at 273. In 2009, Wright was unable to perform a standard exercise treadmill stress test due to severe degenerative joint disease. *Id.* A Lexiscan infusion, commonly referred to as a chemical stress test, reveled she was not suffering another blockage. *Id.*

Wright reported to her cardiologist that she experienced dyspnea on exertion as well as daytime fatigue and sleepiness. *Id.* at 271–73. An EKG showed poor R-wave progression and she was assessed with possible recurrent angina or its equivalent. *Id.* at 272. Medical records from Horizon Family Medical, where Wright received her primary care, noted morbid obesity and uncontrolled diabetes, with an abnormally high A1C. *Id.* at 290, 299. She continued follow-up care for her diabetes and high blood pressure. *Id.* at 289–96. Throughout 2010, Wright received follow-up care for diabetes and hypertension and to obtain medication. *Id.* at 288–93; 329–76. Her medical records noted obesity and, on occasion, Wright complained of chest pain with exertion. *Id.* at 288–93, 346. In February 2011, Wright had run out of all medications and was having difficulty affording them. *Id.* at 339. She continued follow-up care throughout 2011

and 2012, and her primary care providers noted she was compliant with medications. *Id.* at Wright continued to have high A1C readings and high glucose levels. *Id.* at 329–76. Records also note that she was unable to have cardiology follow-up due to a lack of insurance. *Id.* at 396.

Wright presented at the Emergency Room in September 2011 complaining of right lower back pain that had been present for two days. *Id.* at 319–27. She reported that the pain came on gradually after heavy lifting, was made worse with bending, turning or palpitation over the area, and that it improved with rest. *Id.* at 319–20. The symptoms were found to be "consistent with a musculoskeletal etiology of pain in the lower back" and she was given pain medication. *Id.* at 323.

Drs. Gonzolo Fernandez and Vinod Shah performed consultative examinations at Disability Determination Services ("DDS"). *Id.* at 275–77, 305–07. Dr. Fernandez's examination on October 30, 2009, noted that Wright reported she had diabetes, joint pain, and hypertension with occasional chest pain and shortness of breath. *Id.* at 275–77. She stated that she was diagnosed with high blood pressure twenty years earlier and had been on medication for that condition for seven years, with good control. *Id.* at 275. She estimated she could walk one-half mile, stand for one hour at a time, and lift 20 pounds. *Id.* at 276. Although she was able to perform many activities of daily living, she could not do yard work or vacuum. *Id.* Examination revealed weakness in her right hip with otherwise intact motor function, limited knee flexation and full range of motion ("ROM") in her back. *Id.* at 277. Dr. Fernandez determined that Wright could stand and walk 4 to 6 hours with frequent breaks and she could sit for 6 hours with frequent breaks. *Id.* He found that Wright's postural maneuvers would be limited by her joint pain. *Id.*

On June 29, 2011, Dr. Shah performed a consultative examination. Wright described back pain as sharp and stabbing, and stated that it worsened with physical activity. *Id.* at 305. She experienced knee pain episodically with exertion, and she had relief with rest and medication. *Id.* Wright related her history of heart blockage with occasional chest pain which lasted for a few minutes and was relieved by nitroglycerin. *Id.* Aside from vacuuming and cooking, Dr. Shah noted that she could perform daily activities with rest between daily activities. *Id.* Examination noted normal ROM in her joints, intact sensation, and intact motor functions. *Id.* at 306. Dr. Shah diagnosed Wright with osteoarthritis of degenerative spine and lumbar spine, osteoarthritis of knee, diabetes, hypertension, osteoarthritis of the feet, and coronary artery disease. *Id.* at 307. His prognosis of her condition was fair. *Id.* Dr. Shah did not assess walking, standing, or sitting restrictions but found that she could lift no more than 20 pounds occasionally and 10 pounds frequently. *Id.*

At the hearing, Wright testified that she has pain in her back and legs, and sometimes in her chest. *Id.* at 20. She stated that her back pain occurs when she moves around a lot such as when doing housekeeping and that she had experienced such pain as recently as the morning of the hearing. *Id.* at 21. Her back pain is made better if she takes Tylenol and rests. *Id.* Wright stated that she has knee pain when the weather is cold and that she can walk about 30 minutes before she experiences knee pain. *Id.* at 21–22. She also become short of breath. *Id.* at 24. She testified that she experiences cramps in her feet. *Id.* at 22.

Wright testified that she has a history of diabetes for which she takes insulin but it is not controlled. *Id.* at 23. She stated she has had issues with her heart, that she experiences chest pain once in awhile, her most recent episode being the day before the hearing. *Id.* at 23–24. She can stand for about 30 minutes and then must lean on something for support. She can lift about 20

pounds. *Id.* at 24. She has no problems sitting but sometimes has difficulty getting up if she has been sitting too long. *Id.* at 25.

She testified that she does laundry, dusts, and sweeps but must stop for a minute or two. *Id.* She uses a "buggy" when she goes grocery shopping. *Id*. She stated that she drives, reads the Bible and magazines, and goes to Church. *Id.* at 18, 25–26. She also stated that she occasionally drops things she is holding. *Id.* at 26. She stated that although she stopped working because of budget cuts, she believes she could have only continued in that position for awhile because it was getting rough on her. *Id.* at 27. She also stated that she is on medication for both her diabetes and her high blood pressure. *Id.* at 28.

### D. Weight of medical opinions

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however,

"the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(c)(4).

As noted above, consulting examiner Dr. Fernandez found that she could stand and walk up to six hours a day and that she had no postural limitations except for those limited by her arthralgias. Dr. Shah, another consulting examiner, opined that Wright had no restrictions in standing or walking, but that that she could only lift and/or carry 20 pounds occasionally and 10 pounds frequently. Tr. at 307. Dr. Janet Johnson-Hunter, a state agency physician, performed a Physical Residual Functional Capacity Assessment and found that Wright was capable of medium work with limitations. *Id.* at 278–85. ALJ Seery observed that Dr. Johnson-Hunter included exertional and environmental limitations given the combination of her back pain and obesity. *Id.* at 92.

Only the non-examining physicians, Drs. Robert Gardner and Sankar Kumar, found Wright could perform medium work without additional limitations. *Id.* at 36–51; 56–76. Dr. Gardner's assessment was performed prior to Wright's September 2011 Emergency Room visit

8

where records document she experienced back pain after heavy lifting, which was made worse with bending, turning or palpitation over the area, and improved with rest. ALJ Seery found these opinions consistent with the record but also observed they were from non-examiners. *Id.* at 92.

Contrary to ALJ Seery's conclusion, however, Wright's assessed limitations are supported by substantial evidence in the record. The record shows Wright to have a consistent pattern of back issues and limited exertional abilities. The record also shows that Wright could not perform a treadmill stress test, that heavy lifting injured her back and she had to seek emergency treatment, and that she testified that she had to rest when performing everyday activities as she experienced pain and fatigue. *Id.* at 273, 288-93, 319-27. Furthermore, her severe impairments of hypertension, osteoarthritis, obesity, and coronary artery disease suggest she would have postural and exertional limitations or, at a minimum, that these conditions corroborate her allegations of pain and fatigue with activity.

Drs. Fernandez and Shah examined Wright in light of the § 1527(d) factors. Their consequent opinions are both supported by and consistent with the evidence in the record demonstrating Wright's back problems; her need to take breaks and rest when performing activities of daily living; her knee, feet, back and occasional chest pain upon exertion; and her well-documented and severe impairments of osteoarthritis, hypertension, diabetes and obesity. As their opinions are consistent with the record demonstrating these symptoms and conditions, these opinions deserve more weight than non-examining physicians Drs. Gardner and Kumar. In giving less weight to the opinions of Drs. Fernandez and Shah, ALJ Seery failed to identify the "persuasive contrary evidence" justifying affording more weight to non-examiners Drs. Gardner and Kumar. Tr. at 92. ALJ Seery merely concluded that the consultative exams were largely

9

benign and normal. *Id*. While this may be true, both consultative examiners found an RFC for less than medium work. Such findings were further supported by Dr. Johnson-Hunter. Moreover, ALJ Seery erred in discounting the opinion of Dr. Johnson-Hunter on the basis that he found her limitations "too limiting," without citation to the record to discredit her findings. *Id.* at 91–92. Such an explanation, without any support, fails to provide a detailed and reasoned rationale for the evaluation of her opinion. Thus, ALJ Seery's assessment of Dr. Johnson-Hunter's opinion lacks sufficient reasoning to be affirmed.

In sum, the court finds that ALJ Seery did not properly evaluate the medical evidence of record or that he failed to offer the necessary detain and rationale in considering the medical opinion evidence. In such instances, the court cannot conclude that ALJ Seery's decision is supported by substantial evidence. Accordingly, remand on this issue is warranted.

### E. Evaluation of obesity

Wright also argues that ALJ Seery failed to properly consider her obesity and its resulting functional limitations. The Commissioner submits that this condition was properly considered. The court determines that the ALJ failed to consider Wright's obesity as required.

If the records show a claimant is obese, the ALJ must consider the obesity in each of the subsequent steps of the analysis. Social Security Ruling ("SSR") 02–lp, 2002 WL 34686281, at *3 (Sept. 12, 2002). An individual's Body Mass Index ("BMI") is an appropriate measure of obesity, and one is considered obese if his or her BMI is 30.0 or greater. *Id*. at *2 ¶ 1. Under Social Security Ruling 02–lp, obesity alone is an impairment, and obesity can exacerbate the severity of other existing impairments, such as osteoarthritis, hypertension and depression. *Id*. at *1, *3, *5. "The ALJ must assess the entire record to determine the extent to which obesity imposes functional limitations on a claimant, either alone or in combination with other

impairments." *Winston v. Astrue*, 4:11–CV–107–D, 2012 WL 40864448, at *3 (E.D.N.C. Sept. 17, 2012); *see also* SSR 02–1p, 2002 WL 3468628, at *4, *6.

Here, ALJ Seery noted that Wright was 5'1" and weighed 220 pounds, which equates to a BMI of a 41.6. Tr. at 88–89. As noted above, records from her treatment providers list obesity as a condition. *Id.* at 290, 299. ALJ Seery found that while her obesity was a severe condition, it did not meet or equal a listing impairment, either alone or in combination with her other impairments. *Id.* at 87. ALJ Seery further stated that Wright's obesity had been considered at each step of the evaluation in accordance with SSR 02-1p. *Id.* ALJ Seery then determined that Wright was capable of performing a full range of medium work, a finding that necessarily includes no postural limitations in climbing, balancing, kneeling, stooping, crouching, and/or crawling.

Further, in determining that Wright could perform her past work as a CNA, a medium exertion job, ALJ Seery implicitly concluded that her obesity had no impact on her ability to perform the duties of this position. Such a finding appears inconsistent with the step two finding that Wright's obesity is a severe impairment, which significantly impacts her ability to perform basic work-related activities. For example, the job duties of the CNA position include caring for elderly, convalescent, or handicapped persons; performing tasks including changing bed linens, washing and ironing patient's laundry, and cleanings patient's quarters; purchasing, preparing and serving food; assisting patient into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs; assisting patient to dress, bathe, and groom self; and performing variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. *See* DOT 354.377-014. Wright's inability to perform this past work is demonstrated by the following evidence in the record: her reports of pain and fatigue with exertion and in performing

activities of daily living; her testimony that she must take breaks to rest; her difficulty getting up from a seated position; her experience of back pain with heavy lifting; her complaints of dyspnea with exertion and daytime sleepiness; her tendency to occasionally drop things she is holding; and her regular experiences of pain in her back, feet, knee, and chest.

Other than stating that Wright's obesity had been considered at each stage of the sequential evaluation, ALJ Seery merely noted that it not only affects her diabetes and back pain but exacerbates these conditions. Aside from this statement, however, ALJ Seery failed to discuss what impact, if any, Wright's obesity had on her functional abilities as required by SSR 02-1p. It appears ALJ Seery's primary focus with her weight is not in the effect it has on her other conditions or on her ability to perform work activity but instead the lack of evidence that she had tried to lose weight, exercise or adjust her diet. Tr. at 91.

While the Commissioner contends that this point addresses Wright's credibility alone, SSR 02-1p specifically states that "[t]reatment for obesity is often unsuccessful. Even if treatment results in weight loss at first, weight lost is often regained, despite the efforts of the individual to maintain the loss." SSR 02-1p at *2. The Interpretation Ruling further observes:

> A common misconception is that the goal of treatment is to reduce weight to a "normal" level. Actually, the goal of realistic medical treatment for obesity is only to reduce weight by a reasonable amount that will improve health and quality of life. People with extreme obesity, even with treatment, will generally continue to have obesity. Despite short-term progress, most treatments for obesity do not have a high success rate.

*Id.* at *8. Further, "[b]efore failure to follow prescribed treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s)." *Id.* at *9. Additionally, "[t]he treatment must be prescribed by a treating source . . . not simply recommended. A treating source's statement

12

that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." *Id.*

Pointing out that the record lacked evidence of Wright's attempts to lose weight, exercise, or adjust her diet is flawed in two respects. Tr. at 91. First, it presumes that a lack of notation in the medical records equates to an absence of effort on Wright's part in these areas. In fact, it could just mean that she did not communicate these things to her providers or that they did not make note of them. Additionally, such a statement infers that Wright's lack of effort to lose weight, exercise, or adjust her diet is a failure on her part, without identifying the medical directive prescribing, and not merely suggesting, a weight loss, exercise or diet plan. In sum, ALJ Seery erred by failing to give proper consideration to her obesity and be guided by the requirements of SSR 02-1p.

ALJ Seery acknowledged that Wright's obesity exacerbates her diabetes and back pain, and, as noted above, found all three of these conditions to be severe impairments, meaning they posed more than a minimal limitations in her ability to perform work-related activities. Nonetheless, despite these findings, ALJ Seery concluded that no limitation beyond a full range medium work was indicated. Such a finding is inconsistent with the both the medical evidence of record and ALJ Seery's statements in his decision. Moreover, the step four finding that Wright can return to her previous work as a CNA is not supported by substantial evidence inasmuch as the duties of that position are contradicted by the medical evidence as well as ALJ Seery's findings. Consequently, remand for further consideration of Wright's obesity in accordance with SSR 02-1p is appropriate.

### III. Conclusion

For the forgoing reasons, the court recommends that Wright's Motion for Judgment on the Pleadings should be granted, that Colvin's Motion for Judgment on the Pleadings should be denied, and that the Commissioner's final decision should be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 11, 2015.

_____
Robert T. Numbers, II
United States Magistrate Judge