IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-479-FL

| | |
|---|---|
| ANNIE D. WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 16, 18). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court grant plaintiff's motion, deny defendant's motion, and remand to the Commissioner for further proceedings. Defendant timely filed objections to the M&R. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court rejects the recommendation of the magistrate judge and grants defendant's motion for judgment on the pleadings.

**BACKGROUND**

Plaintiff applied for disability insurance benefits on May 10, 2011, and disabled widow's benefits on January 17, 2012, alleging disability beginning August 1, 2009. The application was denied initially and upon reconsideration. Plaintiff subsequently filed a written request for hearing. Following hearing, on April 17, 2013, an Administrative Law Judge ("ALJ") denied plaintiff's

application. On June 23, 2014, the appeals council denied plaintiff's request for review. Plaintiff commenced the instant action on August 26, 2014.

## DISCUSSION

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."

2

Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 1, 2009, the date of alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus; hypertension with history of coronary artery disease; obesity; and mechanical back pain with a diagnosis of arthritis. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the listings in the regulations. Prior to proceeding to step four, the ALJ determined that during the

3

relevant time period plaintiff had the residual functional capacity ("RFC") to perform medium work. In making this assessment, the ALJ found plaintiff's statements about her own limitations not fully credible. At step four, the ALJ concluded plaintiff was capable of performing past relevant work as a certified nurse's assistant. Thus, the ALJ concluded that plaintiff was not under a disability from August 1, 2009, through the date of the ALJ's decision on April 17, 2013.

B.  Analysis

Plaintiff argues that the ALJ improperly weighed the opinions of Drs. Fernandez and Shah, who conducted consultative examinations of plaintiff. Plaintiff also argues that the ALJ failed to properly analyze plaintiff's obesity under Social Security Ruling 02-1p. The court will address each argument in turn.

1.  Medical Opinions

Regardless of the source, the ALJ must evaluate every medical opinion received. See 20 C.F.R. § 404.1527(c), 20 C.F.R. § 404.1527(e)(2). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. Id. § 404.1527(c)(1). Further, the ALJ generally should give more weight to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. Id. § 404.1527(c)(2). In any event, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

While an ALJ is under no obligation to accept any medical opinion, he must nevertheless explain the weight afforded such opinions. See S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996);

4

S.S.R. 96–6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir.1987) (quoting Gordon v. Schweiker, 725 F.2d 231 (4th Cir.1984)). In particular, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

In this case, the ALJ discussed the opinions by Drs. Fernandez and Shah in detail, and the ALJ sufficiently explained the reasons for the weight given to these opinions to enable meaningful review. Plaintiff attended a consultative examination with Dr. Fernandez in October 2009, after which Dr. Fernandez opined that plaintiff should be able to stand and walk for four to six hours a day "with frequent breaks," and to sit six hours with "frequent breaks." (Tr. 277). He noted "no postural limitations on bending, stooping, and crouching except those limited by her arthralgias [joint pain]." (Id.). Plaintiff attended a consultative examination with Dr. Shah in June 2011, after which Dr. Shah found "[n]o restriction for walking, standing, or sitting for eight-hour work period," and no limitations on bending, stooping, crouching, or squatting, but found a limitation to "20 pounds occasionally and 10 pounds frequently," (Tr. 307), which is a limitation that would allow for light work but precludes medium work. See 20 C.F.R. § 404.1567(b) & (c).

With respect to the opinion of Dr. Fernandez, the ALJ stated that "[t]his opinion is being given some weight by the undersigned because his opinion appears to be rather vague and the undersigned does not believe that with the claimant's impairments that she would require frequent

5

breaks." (Tr. 90). With respect to both consultative examinations, the ALJ notes "the successive consultative examinations were benign, with essentially normal findings, and the balance of the records demonstrate little, if any, abnormalities objectively." (Tr. 92). The ALJ further determined "[c]learly there is no basis in the consultative examinations, or the balance of the clinical record, to suggest the claimant would need more than ordinary breaks during a work day, or would be limited to lifting 20 pounds." (Id.).

The ALJ described the consultative examiner opinions in contrast to two state agency medical consultant opinions, by Drs. Gardner and Kumar, that the claimant could perform a medium level of work with no other limitations. (Id.). The ALJ noted, "[t]hese opinions are considered with the caveat that they are non examining physicians," but noted "I find them consistent with the clinical record," and "[t]he important factor in this case is the lack of clinical findings indicative of disability." (Id.). The ALJ also described the opinion of another state agency medical consultant, Dr. Johnson-Hunter, who opined that plaintiff could perform work at a medium exertional level with postural and environmental limitations. (Tr. 91). The ALJ gave this opinion some weight because "the doctor was able to review the claimant's medical records to determine that the combination of her back pain and obesity would cause her to have some limitations in regards to lifting and carrying; however [the ALJ felt] that the postural and environmental limitations are too limiting." (Tr. 92).

Substantial evidence supports the ALJ's reliance on the opinion of Drs. Gardner and Kumar, while giving less weight in part to the opinions of Drs. Fernandez, Shah, and Johnson-Hunter. As an initial matter, the clinical findings and evidence do not support limiting plaintiff to lifting 20

6

pounds occasionally and 10 pounds frequently. In his examination notes, while Dr. Fernandez noted plaintiff's own report that she could lift 20 pounds in her activities of daily living, Dr. Fernandez noted plaintiff's "[m]otor strength is 5/5 in her upper and lower extremities bilaterally except for her right hip, which is 5-/5," and plaintiff "had good muscle bulk tone and 5/5 grip strength bilaterally." (Tr. 276-77). In addition, plaintiff had "[n]o muscle spasms," and "[n]o tenderness of the lumbar spine," and a "[f]ull range of motion of her neck, shoulders, elbows, forearms, ankles, writs, hands, and fingers." (Id.). Similarly, in his examination, Dr. Shah notes normal range of motion in all areas of exam, as well as normal gait and station, with full 5/5 strength in upper and lower extremities. (Tr. 306). She had no swelling, tenderness, muscle spasm, and had a negative straight leg test. (Tr. 307).

Likewise, neither Dr. Fernandez or Dr. Shah noted a clinical basis for frequent breaks. Dr. Shah notes that plaintiff "sat confortably in the chair," did not need assistance, gave good effort, and was "not short of breath." (Tr. 306). Dr. Fernandez also noted plaintiff was "able to walk down the hall with a normal gait, can get on and off the examination table and sit comfortably during the exam." (Tr. 276). Plaintiff had regular heart rate and rhythm, and clear lungs. (Tr. 277). Further it is significant that while Dr. Shah included a limitation to 20 pounds lifting, and Dr. Fernandez included a limitation of frequent breaks, neither one included both limitations in their opinions. Thus, each opinion, in part, provides substantial evidence supporting the ALJ's RFC determination.

Further substantial evidence in the record supports the ALJ's decision to give more weight to the opinions of Drs. Gardner and Kumar, than Drs. Fernandez and Shah. Particularly noteworthy is the lack of clinical evidence demonstrating a limitation on lifting and need for frequent breaks,

7

Case 5:14-cv-00479-FL   Document 22   Filed 09/29/15   Page 7 of 13

where, as noted by Drs. Gardner and Kumar, plaintiff's physical exams have all been within normal levels. (E.g., Tr. 42, 63). In addition, in an exam by plaintiff's treating physician, Dr. Subedi, in May, 2012, plaintiff reported "[n]o musculoskeletal symptoms," and "denie[d] back pain, knee pain etc." (Tr. 394). He noted no cardiovascular or pulmonary symptoms with plaintiff denying wheezing or shortness of breath. (Id.). He also recommended "increased physical activity" in April 2012, and "regular exercise" in May 2012. (Tr. 395, 397).

Furthermore, plaintiff testified that she had worked previously as a hospital/home health care provider, but was terminated due to budget cuts and a change in the hospital management. (Tr. 19). She testified that she "could have for a while" continued working, "but it was getting kind of rough on me because when I was in there I was driving to patients' homes and sometimes I was – I had run off the road." (Tr. 27). Currently, plaintiff drives "about 10 miles a day" when "I go to church, to my daughter, church mostly." (Tr. 28). She watches her grandchildren when their parents want her to. (Tr. 29).

In light of the foregoing, substantial evidence supports the ALJ's determination giving less weight to the opinions of Drs. Fernandez and Shah, who opine that plaintiff is limited to lifting no more than 20 pounds or limited to frequent breaks, and giving more weight to the opinions of Drs. Gardner and Kumar, who opine that plaintiff has ability to perform a full range of medium work.

Plaintiff argues nonetheless that the ALJ failed to take into consideration properly other evidence in the record regarding her limitations. In particular, plaintiff refers to a cardiovascular examination report in May 2009, which notes that plaintiff was "unable to perform on standard exercise treadmill testing secondary due to severe degenerative joint disease." (Tr. 273). But, this

8

note was made in the "history" section of the report and no examination was made regarding her reported degenerative joint disease. (Id.). Rather, the cardiovascular examination at issue was unremarkable on the subject of the test, where plaintiff had normal blood pressure and a negative stress test for ischemia, as noted by the ALJ (Tr. 89, 273).

Plaintiff also notes an instance in September 2011, where she reported to the emergency room with "back pain" that "came on gradually after heavy lifting." (Tr. 322). But, as discussed by the ALJ in his decision, the results of examination at this visit were within normal limits (Tr. 90, 323). Plaintiff was prescribed pain medication and discharged less than two hours later "in good condition to follow up with [her] physician if not feeling better in 1-2 days." (Tr. 326). As noted previously, plaintiff's treating physician noted in May 2012 "[n]o musculoskeletal symptoms" or "back pain." (Tr. 394).

In sum, substantial evidence supports the ALJ's determination that limitations stated by Drs. Fernandez and Shah are not supported by the clinical evidence and other evidence in the record. While the May 2009 and September 2011 reports provide some evidence to the contrary, it is the duty of the ALJ, and not this court to weigh the inconsistencies in such evidence in reaching his decision. Where there is more than a scintilla of evidence supporting the ALJ's determination, and where the ALJ sufficiently explained the reasons for his decision, this court is obligated to defer to the ALJ's assessment. Accordingly, the ALJ properly weighed the opinions of Drs. Gardner and Kumar.[1]

---

[1] The court departs from the reasoning of the M&R for the reasons stated above, and also because the M&R looked to whether the ALJ had identified "persuasive contrary evidence" justifying affording more weight to non-examining physicians. (DE 20 at 9). This standard applicable to the opinion of a treating physician is not applicable here. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). The standard is rather whether the ALJ has identified why "a physician's opinion is not supported by clinical evidence or . . . is inconsistent with other substantial evidence," Craig,

2.  Obesity

Plaintiff argues that the ALJ failed to take into account her obesity properly in the RFC determination. "Obesity can cause limitation of function," and "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1P, 2002 WL 34686281*6 (September 12, 2002). "For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Id. Accordingly, an ALJ must assess "the effect obesity has upon the individual's ability to perform routing movement and necessary physical activity within the work environment." Id.

In this case, the ALJ adequately took into account plaintiff's obesity in determining plaintiff's RFC. In particular, the ALJ's discussion reflects the lack of evidence in the record showing limitations beyond that found in the RFC determination due to plaintiff's obesity. Although clinical records and findings by examining physicians note plaintiff's obesity, they do not discuss any functional limitations due to such obesity. For example, Dr. Fernandez notes in his report of examination in October 2009 that plaintiff "is obese," weighing 230 pounds at 63 inches tall. (Tr. 276-77). However, Dr. Fernandez notes that plaintiff can walk a half-mile, can walk down the hall with a normal gait, and can get on and off the examination table and sit comfortably during the exam. (Tr. 276). Dr. Shah notes plaintiff's weight at 224 pounds, but notes no functional limitations in terms of range of motion, strength, or movement. (Tr. 306).

Obesity features more prominently in medical records relating to plaintiff's diabetes, and cardiovascular care. For example, in April 2012, plaintiff presented to her treating physician, Dr.

---

76 F.3d at 590, which the ALJ did in this case. (See Tr. 88-92).

10

Subedi, for "follow up on Diabetes and other medical problems," and Dr. Subedi focused his examination report, plan, and instructions, on control of plaintiff's diabetes. Dr. Subedi disagnosed plaintiff with "Diabetes mellitus type 2: Follow A1C; Benign essential hypertension: controlled; Coronary artery disease: needs to follow Cardiologist; Hyperlipidemia; [and] Obesity." (Tr. 397). For his plan and instructions, he stated:

> Continue medication – Continue blood glucose monitoring at home and record – discussed A1C level, Goal A1C of less then [sic] 7.0 was discussed. Patient understands that the only way to achieve is by proper diet, exercise and medical follow up. . . . Counseled on diet, wt loss and exercise, Patient education and self management training was reinforced for the goal towards weight reduction. Physical activity and Behavioural [sic] modification are important for weight loss programs and helpful in maintaining weight. . . . . Lifestyle modification on the reduction of saturated fat, trans fat, cholesterol intake, weight loss/maintenance and increased physical activity recommended.

(Id.). As such, while Dr. Subedi discussed obesity in conjunction with plaintiff's diabetes, he notes no functional limitations beyond plaintiff's RFC as a result of the obesity. (See id.).

Similarly, treatment records related to plaintiff's diabetes in 2009 to 2011, with Horizon Family Medicine and Comm Well Health, noted plaintiff's obesity, but provided no evidence of functional limitations as result, with symptoms generally unremarkable. (E.g., Tr. 289-90; 334-35; 349). All these records were discussed by the ALJ in making his RFC determination. (Tr. 89). In sum, where the impact of plaintiff's obesity is discussed minimally in plaintiff's medical records, the ALJ's RFC discussion adequately takes into account plaintiff's obesity.

Plaintiff argues, nonetheless, that the ALJ erred by failing to further explain the impact of plaintiff's obesity on her RFC. She points to the ALJ's statement that "[t]he claimant was identified as being morbidly obese on several occasions, which undoubtedly not only affects, but also

11

exacerbates her diabetes and her back pain." (Tr. 91). There was, however, no more that the ALJ needed to say based upon the medical evidence in the record, where such medical evidence also does not provide any more details of functional limitations due to obesity. Rather, the ALJ, in so stating, reflected generally recognized information regarding obesity, as noted also in Social Security Ruling 02-1P, that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02-1P, 2002 WL 34686281, at *6.

Finally, plaintiff faults the ALJ for noting in his RFC determination that "[t]here is no evidence that the claimant has tried to lose weight, exercise, or adjust her diet." (Tr. 91). Plaintiff suggests that the ALJ improperly took into account plaintiff's failure to follow treatment recommendations, per the guidelines in SSR 02-1P. In particular, SSR02-1P provides: "Before failure to follow prescribed treatment for obesity can become an issue in a case, [an ALJ] must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s)." SSR 02-1P, 2002 WL 34686281, at *9. "The treatment must be prescribed by a treating source, . . . not simply recommended, [and] [a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." Id.

SSR 02-1P, however, only addresses restrictions on consideration of a "failure to follow prescribed treatment for obesity" in denying benefits to a person who already has been found disabled due to obesity. Id. (emphasis added). The ALJ here does not state that plaintiff failed to follow a prescribed treatment for disabling obesity. (Tr. 91). As an initial matter, plaintiff's physicians recommended diet, exercise, and weight loss in connection with her diabetes condition,

12

not for disabling obesity. (E.g., Tr. 397). Furthermore, the ALJ's reference to diet, exercise, and weight loss, is included within an overall discussion of plaintiff's credibility, along with summary of her testimony as to activities of daily living and reasons for her unemployment. (Id.). The ALJ properly may consider plaintiff's behavior in this manner in evaluating her credibility for purposes of RFC determination. See, e.g., Stokes v. Astrue, No. 3:09CV158, 2010 WL 129811, at *4 (E.D. Va. Jan. 8, 2010) ("SSR 02-1p does not prohibit an ALJ from considering a claimant's failure to follow her doctors' recommendations for weight loss in the context of a credibility determination.").

In sum, the ALJ properly considered plaintiff's obesity in making the RFC determination.

CONCLUSION

Based on the foregoing, the court rejects the recommendation of the M&R, DENIES plaintiff's motion for judgment on the pleadings (DE 16), and GRANTS defendant's motion for judgment on the pleadings (DE 18). The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of September, 2015.

LOUISE W. FLANAGAN
United States District Judge

13

Case 5:14-cv-00479-FL   Document 22   Filed 09/29/15   Page 13 of 13